UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

BRANDON A. BADEAUX                                    CASE NO. 21-11077
      DEBTOR                                         CHAPTER 7

PLAYA SHIRLEY, LLC,[1]
JOHN PEARSON
      PLAINTIFFS

VERSUS                                                ADV. NO. 21-1044

BRANDON A. BADEAUX
      DEFENDANT

### MEMORANDUM OPINION

Plaintiffs Playa Shirley, LLC,[1] and John Pearson seek summary judgment[2] declaring that the defendant and debtor Brandon A. Badeaux's debt to them is nondischargeable under Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).  The plaintiffs also seek denial of the debtor's chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2).

### I.  THE DEBTOR RECEIVED SUFFICIENT NOTICE OF THE HEARING ON THE PLAINTIFFS' MOTION

Plaintiffs served the summons and complaint on Badeaux,[3] who did not respond timely to either the complaint or the motion for summary judgment.[4]  The debtor's answer was first due on December 23, 2021,[5] but he requested two extensions of time, the last of which ran through

---

[1]  Clint and Chantal Shirley are the members and managers of Playa Shirley, LLC.

[2]  Motion for Summary Judgment, P-15.

[3]  Certificate of Service of Summons, P-5.  Certificate of Service of Motion for Summary Judgment, P-17.

[4]  The plaintiffs filed the complaint on November 23, 2021.  The certificate of service shows that the debtor was served by first class mail on November 24, 2021.  Certificate of Service of Summons, P-5.

[5]  Summons, P-3.

February 7, 2022.[6]  The debtor's newly retained counsel finally filed an answer[7] the morning of the March 15, 2022 hearing on the plaintiffs' motion for summary judgment,[8] but the debtor never responded to the motion for summary judgment.

At the hearing on the motion for summary judgment, the defendant's lawyer, who had not made an appearance before filing the answer earlier that morning, orally moved to continue the hearing, urging that his recent retention and due process required a postponement.  He argued that the debtor received only twenty days' notice of the hearing on the motion rather than the twenty-one days' notice that Local Rule 9013-1(B) requires.

But the record demonstrates otherwise: Badeaux received twenty-one days' notice that a hearing on the motion for summary judgment would be held March 15, 2022.

---

[6]  Robin DeLeo, the debtor's counsel in the bankruptcy case, filed the debtor's two motions to extend time to file responsive pleadings but never enrolled as the defendant's counsel in this adversary proceeding.  In the second motion for extension of time, Ms. DeLeo represented that the debtor was ill and that she was filing the motion "as a favor to Debtor until he is capable of deciding how to proceed and whom to retain post-petition."  [P-12, ¶ 7].  Although the second motion was filed eleven days before the January 24, 2022 scheduling conference, neither the debtor nor counsel participated in the conference.  Despite the lack of appearance for the defendant, the court extended the answer deadline to February 7, 2022 [Scheduling Order, P-14, ¶ 2].  The debtor retained Jonathon Detrinis as counsel the day before the hearing on the motion for summary judgment.  At the March 15, 2022 hearing on summary judgment, Badeaux's newly retained counsel represented only that the debtor had been in the process of retaining Ms. DeLeo over the prior few months.  Whatever the reason for the delay, Ms. DeLeo did not enroll in the proceeding, instead referring the debtor to Mr. Detrinis.

[7]  Answer to Complaint, P-21.

[8]  The deadline to respond to the plaintiffs' motion for summary judgment was March 8, 2022.  Local Rule 9013-1(E) provides

> Objections and responses to motions that are noticed for hearing must be filed no later than seven (7) days prior to the hearing, unless the court orders otherwise. If a party wishes to file a pleading within seven (7) of the hearing, it must file a motion for leave to file a late objection or response and notify chambers. Otherwise, in the court's discretion, the late filing may be stricken without notice. …

Plaintiffs filed their motion for summary judgment on February 22, 2022[9] and noticed it for hearing on March 15, 2022 at 2:00 p.m.[10] in compliance with the court's order following a January 24, 2022 telephone conference.[11]  The same day, they served the motion for summary judgment and the notice of hearing on the debtor by first class mail, as the certificate of service reflects.[12]  The debtor's objection was due March 8, 2022 pursuant to Local Rule 9013-1(E).[13] At the court's request, plaintiffs on February 23, 2022 filed an amended notice of hearing that merely changed the time of the March 15, 2022 hearing from 2:00 p.m. to 10:00 a.m.[14]  The record reflects that plaintiffs served the amended notice of hearing on the debtor,[15] who thus received the notice of the hearing time change.  Thus Badeaux had twenty-one days' notice that a hearing would be held on the motion for summary judgment on March 15, 2022.  Whether the hearing took place at 10:00 a.m. or 2:00 p.m. on March 15, the debtor's objection was due March 8, 2022 pursuant to Local Rule 9013-1(E).

The defendant does not contend that he lacked actual notice of the March 15 hearing. And despite securing two extensions of time to respond to the complaint, before the March 15 hearing began, Badeaux never sought an extension of time to respond to the motion for summary judgment or to continue the hearing.  His continued dilatoriness cannot spare him from the

---

[9]  Motion for Summary Judgment, P-15.

[10]  Notice of Hearing, P-16.

[11]  Order Following Telephone Conference, P-14.  The debtor did not appear at the January 24, 2022 scheduling conference and no counsel appeared on his behalf.

[12]  Certificate of Service, P-17.

[13]  *See* note 8 above.

[14]  First Amended Notice of Hearing, P-19.

[15]  Certificate of Service, P-20.

consequences of his failure to comply with the Federal Rules of Bankruptcy Procedure and the local rules. In any case, he failed to object or respond to the motion.

In summary, the defendant was not prejudiced by receiving notice of a hearing time change one day after receiving timely notice of the motion and hearing date.[16]

## II. SUMMARY JUDGMENT STANDARD

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P. 56 applicable in adversary proceedings so jurisprudence construing Rule 56 applies equally to motions brought under Fed. R. Bankr. P. 7056.

The Fifth Circuit holds that summary judgment is proper

if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[17]

Summary judgment may be granted despite the lack of opposition if the mover "made a *prima facie* showing of its entitlement to judgment."[18]

## III. FACTS

Local Rule 7056-1(A) provides:

Every motion for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. … All material facts in the statement will be deemed admitted for purposes of the motion unless controverted.

---

[16] Counsel for the debtor participated in the hearing but failed to oppose the motion, so consistent with Local Rule 9013-1(E), was denied leave to argue. *See* n. 10, above.

[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (citing Fed. R. Civ. P. 56(c)).

[18] *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

The plaintiffs' enumerated undisputed material facts[19] are deemed admitted because the debtor has not controverted them as the Local Rule requires and Fed. R. Civ. P. 56(e)(2) permits.[20]

The summary judgment evidence established that from 2016 through 2017, the plaintiffs entered into written and oral agreements with Brandon Badeaux and invested funds in real estate development projects. They did so relying on the defendant's representations that he or his companies owned the real properties on which the projects were to be built and his agreement to split the profits from those projects with them.[21]

The debtor specifically represented to both plaintiffs in December 2016 that he or his company, Acadian Properties of Austin, LLC ("Acadian Properties"), owned the real property at 208 Waipahoehoe in Bastrop, Texas. Based on this, as well as defendant's promise to split the profit from the project, the plaintiffs without knowledge of each other signed nearly identical contracts with Acadian Properties[22] and gave Badeaux funds to develop the property.[23]

But the defendant neither owned nor had the right to develop 208 Waipahoehoe. The deed history reflects that Pines & Prairie Land Trust has owned 208 Waipahoehoe since

---

[19] Statement of Undisputed Material Facts, P-15.

[20] Fed. R. Civ. P. 56(e)(2), made applicable by Fed. R. Bankr. P. 7056, allows courts to consider uncontroverted facts deemed admitted; it provides:

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: …
>
> > (2) consider the fact undisputed for purposes of the motion; …

[21] Statement of Undisputed Material Facts, P-15; Declaration of Clint Shirley, Exhibit 1; Declaration of John Pearson, Exhibit 2.

[22] 208 Waipahoehoe Agreements, P-15, Exhibit 5. John Pearson contracted on behalf of his company, JNB Inc. Clint Shirley signed the contract on behalf of Playa Shirley, LLC. The defendant signed the contracts as manager of Acadian Properties.

[23] The plaintiffs only later learned that the debtor had made a similar deal with them both. Declaration of Clint Shirley, P-15, Exhibit 1, ¶ 12; Declaration of John Pearson, P-15, Exhibit 1, ¶ 11.

December 2014 and that the property is protected from development as part of the Colorado River Refuge.[24]

Badeaux also contracted with Playa Shirley, LLC, and John Pearson on other projects.

Specifically, he convinced Playa Shirley, LLC,[25] to invest in projects involving properties in Bastrop, Texas, at 152 Kannapali, 114 Haliimaile and 116 Akaloa,[26] by falsely representing that he or his companies owned them.  In fact, neither Badeaux nor his companies ever owned an interest in 152 Kannapali or 114 Haliimaile;[27] and although Acadian Properties owned 116 Akaloa at one time it had sold the real estate more than six months before its September 2017 agreement with Playa Shirley, LLC.[28]

Likewise, Pearson, as manager of his company JNB Enterprises, signed an agreement with Acadian Properties in September 2017[29] and invested about $91,000[30] for the development of the property at 142 Kokomo in Bastrop, Texas.  Acadian Properties owned 142 Kokomo at one time but sold it in January 2016, well before its agreement with Pearson's limited liability company.[31]

---

[24]  Waipahoehoe Deed History, P-15, Exhibit 6; Pines & Prairie Land Trust web pages, Exhibit 7.

[25]  Playa Shirley Agreements, P-15, Exhibit 8; Declaration of Clint Shirley, P-15, Exhibit 1, ¶¶ 13, 14.

[26]  Declaration of Clint Shirley, P-15, Exhibit 1, ¶¶ 13, 14; Play Shirley/Bastrop Deed History, P-15, Exhibit 9; Akaloa Deed History, P-15, Exhibit 10.

[27]  Play Shirley/Bastrop Deed History, P-15, Exhibit 9.

[28]  Exhibit 9; Akaloa Deed History, P-15, Exhibit 10.

[29]  142 Kokomo Agreement, P-15, Exhibit 11; Declaration of John Pearson, P-15, Exhibit 2,

[30]  Declaration of John Pearson, P-15, Exhibit 2, ¶ 12.

[31]  142 Kokomo Deed History, P-15, Exhibit 12; Declaration of John Pearson, P-15, Exhibit 2, ¶ 12.

When none of the Bastrop developments came to fruition, the plaintiffs demanded that Badeaux return their investments.  The defendant first wrote seven checks on a business account to John Pearson's company, JNB Enterprises,[32] later replacing six of them with checks drawn on his personal account.[33]  The six replacement checks drawn on Badeaux's personal account, totaling $665,063.02, were dishonored for insufficient funds.[34]  Only the check drawn on Badeaux's business account was honored.  The debtor later memorialized the balance of his debt to John Pearson in a promissory note for $1,753,905.89.[35]

Similarly, Badeaux wrote Playa Shirley three checks totaling $167,124.00 in June 2019.[36] After learning from Mr. Pearson of the dishonor of the checks he'd received, Playa Shirley did not attempt to negotiate the checks Badeaux gave it.[37]  Much like his transaction with Pearson, Badeaux acknowledged his debt to Playa Shirley by executing a $973,907.86 promissory note.[38]

---

[32]   Declaration of John Pearson, P-15, Exhibit 2, ¶ 14.  Neither the account names nor the amounts of the checks are in the record.

[33]   *Id*.

[34]   *Id*.  In July 2020, the Twenty-Second Judicial District Court for the Parish of St. Tammany issued a Bill of Information against the debtor for six counts of "issuing worthless checks" to JNB Enterprises under La. R.S. 14:71.AC(1).  July 2020 Bill of Information, P-15, Exhibit 13.  In January 2022, the Attorney General for the State of Louisiana issued a Bill of Information against the debtor for two counts of "contractor misapplication of payment." January 2022 Bill of Information, P-15, Exhibit 19.  The record contains no evidence of the disposition of those cases.

[35]   Promissory Note dated December 1, 2019, P-15, Exhibit 14; Declaration of John Pearson, P-15, Exhibit 2, ¶ 16. John Pearson individually is the note's payee.  It called for monthly payments of $35,000 beginning November 15, 2019.

[36]   Declaration of Clint Shirley, P-15, Exhibit 1, ¶ 16.  Neither the account names nor the amounts of the checks are in the record.

[37]   *Id*.

[38]   Promissory Note dated November 1, 2019, P-15, Exhibit 14; Declaration of Clint Shirley, P-15, Exhibit 1, ¶ 17. The note obligated the debtor to make monthly payments of $35,000 beginning November 15, 2019.  For some reason Clint Shirley signed the note as "lender" although the payee is Playa Shirley, LLC.

After Badeaux's default on the notes, the plaintiffs sued him in the Twenty-Second Judicial District Court, which later rendered judgment[39] against him and in plaintiffs' favor, awarding

    a.  Playa Shirley, LLC, "$999,986.31, plus all reasonable past, present, and future attorneys' fees … plus judicial interest from the date of judgment until paid;" and

    b.  Pearson "$1,740,422.32, plus all reasonable past, present, and future attorneys' fees … plus judicial interest from the date of judgment until paid."

The judgment also assessed all costs to the debtor.[40]  A later judgment awarded each plaintiff attorneys' fees of $10,858.54.[41]

The complaint's allegations supporting discharge denial focus on the defendant's wife's acquisition of immovable property after the October 2020 judgment.

The debtor's wife, Jennifer Eileen Badeaux, bought the immovable property and improvements at 302 Abita Place in Mandeville, Louisiana ("Abita Place Property") for $510,000 on January 22, 2021.[42]  Both Badeaux and his wife declared in the cash deed for the transaction that the real estate was her separate property.[43]

The debtor filed chapter 7 on August 16, 2021.[44]  The debtor declared under penalty of perjury in Schedule A/B that he had an ownership interest in the Abita Place Property, which he

---

[39]  October 21, 2020 Judgment, P-15, recorded in St. Tammany Parish on November 2, 2020.

[40]  *Id.*

[41]  February 9, 2021 Attorney's Fee Judgment, P-15, Exhibit 16.

[42]  302 Abita Place Cash Deed, P-15, Exhibit 17.

[43]  *Id.*

[44]  *In re Brandon A. Badeaux*, Case no. 21-11077.

characterized as community property.[45]  He also claimed a $35,000 Louisiana homestead exemption on it.[46]

However, both the declaration and the homestead exemption claim were contrary to the January 2021 cash deed's recital that the debtor's wife acquired the Abita Place Property as her separate property, and thus not property of his bankruptcy estate.[47]  His Schedule D identified the mortgage holder, PNC Mortgage, but in response to Schedule D's question, "Who owes the debt?," and "Check if this claim relates to a community debt," Badeaux did not indicate that the mortgage debt was a community obligation.[48]

## IV.  ANALYSIS

The plaintiffs have the burden of proving by a preponderance of evidence both their objection to discharge and the nondischargeability of Badeaux's debt to them.[49]

### A. Objection to Dischargeability under Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; …

The Fifth Circuit explained in *Collins v. Zolnier (Matter of Zolnier)*[50]:

---

[45]  Schedule A/B, Case no. 21-11077, P-15, p. 1.

[46]  Schedule C, Case no. 21-11077, P-16, p. 1.

[47]  11 U.S.C. § 541(a)(2).

[48]  Case no. 21-11077, P-17, p. 3.  But the debtor also declared under penalty of perjury in Schedule H that he and his wife live in Louisiana, a community property state.  Case no. 21-11077, P-20.

[49]  *U.S. v. Coney,* 689 F.3d 365, 373 (5th Cir.2012), and *Matter of Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992) (citing *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654 (1991)).

[50]  *Collins v. Zolnier (Matter of Zolnier)*, 2021 WL 5778461 (5th Cir. 2021).

Generally, to prove "actual fraud" under § 523(a)(2)(A), the creditor must show that the debtor made a false representation with intent to deceive the creditor and that the creditor "actually and justifiably relied on the representation," sustaining "a loss as a proximate result."[51]

To determine whether a debtor had the intent to deceive under section 523(a)(2)(A),

A judge may look at the totality of the circumstances and infer an intent to deceive when "[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine" to produce such an inference.[52]

The record supports a finding and conclusion that Badeaux knew, or should have known, that he and his companies did not own the Texas properties for which he sought the plaintiffs' investment. It also supports a finding and conclusion that the plaintiffs relied on Badeaux's misrepresentations that he owned the properties in making the investments and that they sustained loss in the amounts the state court awarded.

Accordingly, the damages that the Louisiana state court judgments of October 21, 2020 and February 9, 2021 awarded plaintiffs Playa Shirley, LLC, and John Pearson against Brandon Badeaux are nondischargeable under Bankruptcy Code section 523(a)(2)(A).

## B. Objection to Dischargeability under Section 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debts

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— …

(B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

---

[51] *Id.*, at *2 (citing *Saenz v. Gomez*, 899 F.3d 384, 394 (5th Cir. 2018)).

[52] *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 482 (5th Cir. 2009) (quoting *Norris v. First Nat'l Bank (In re Norris),* 70 F.3d 27, 31, n. 12 (5th Cir.1995), and *In re Miller,* 39 F.3d 301, 305 (11th Cir.1994)).

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; …

The plaintiffs contend that the contracts Badeaux signed are materially false statements that also support nondischargeability under section 523(a)(2)(B).  Specifically, the plaintiffs aver that the contracts falsely represented that

(i) Debtor owned the properties being developed; (ii) Plaintiffs were investing in the development of these properties; and (iii) Plaintiffs would receive a return on their investment with profits upon completion …[53]

Because each contract referenced only a single parcel of real estate, the plaintiffs predictably cited *Lamar, Archer & Cofrin, LLP v. Appling*[54] for its ruling that "a statement about a single asset can be a 'statement respecting the debtor's financial condition' under § 523(a)(2)(B).'"[55]

But the contracts in the record[56] include no representation that Badeaux or his company, Acadian Homes, owned the properties at the center of plaintiffs' claims.  Nor is the amount each plaintiff invested made clear in the contracts.[57]  Finally, the contracts contain an estimated profit amount but did not promise a specific return, hence are not misrepresentations of the expected return on the plaintiffs' investments.[58]

---

[53] Motion for Summary Judgment, P-15, ¶ 51.

[54] *Lamar, Archer & Cofrin, LLP v. Appling,* 138 S.Ct. 1752, 201 L.Ed.2d 102 (2018).

[55] *Id*. at 1764.

[56] Only the first page of each contract is attached to the motion for summary judgment.  Even the documents referenced on the first page of each contract were omitted.  208 Waipahhoehoe Agreements, P-15, Exhibit 5; Playa Shirley LLC Agreements, P-15, Exhibit 8; 142 Kokomo Agreement, P-15, Exhibit 11.

[57] *Id.*

[58] *Id.*

These reasons support denial of the plaintiffs' motion for summary judgment under

section 523(a)(2)(B).

### C.  Objection to Dischargeability under Section 523(a)(4)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting

in a fiduciary capacity, embezzlement, or larceny."

The plaintiffs contend the debtor embezzled funds, rendering his debt to them

nondischargeable.

The Fifth Circuit in *Miller v. J.D. Abrams Inc. (Matter of Miller)*[59] defined *embezzlement*

"for the purposes of § 523(a)(4) as the fraudulent appropriation of property by a person to whom

such property has been entrusted, or into whose hands it has lawfully come."[60]

The plaintiffs established that they gave the debtor control of their funds but failed to

show the defendant's use of the funds after the plaintiffs made the investments.  Thus, a genuine

issue of material fact concerning the debtor's use of the funds precludes summary judgment

declaring the defendant's debt nondischargeable under section 523(a)(4).

### D.  Objection to Dischargeability under Section 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by

the debtor to another entity or to the property of another entity."

[A]n injury is "willful and malicious" where there is either an objective
substantial certainty of harm or a subjective motive to cause harm.[61]

---

[59]  *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999).

[60]  *Id*. at 602.

[61]  *Miller*, 156 F.3d at 606 (5th Cir. 1998).

The Fifth Circuit held in *In re Williams*[62] that "section 523(a)(6) excepts contractual debts from discharge when those debts result from an intentional or substantially certain injury…."

The summary judgment evidence established that Badeaux intentionally misrepresented to the plaintiffs that he owned the Texas properties to induce them to invest in development projects. The debtor's taking the plaintiffs' money to develop properties with the knowledge that he did not own or have the legal right to develop them, was substantially certain to cause economic injury to the plaintiffs. Hence, the defendant's debts to plaintiffs are nondischargeable under Bankruptcy Code section 523(a)(6).

### E. Objection to Discharge under Section 727(a)(2)

The plaintiffs also object to Badeaux's discharge under Bankruptcy Code section 727(a)(2). Loss of a discharge thwarts the very basis for seeking bankruptcy relief and is a serious penalty for misconduct during a bankruptcy case.[63] As the Fifth Circuit observed in *Judgment Factors, L.L.C. v. Packer (In re Packer)*,[64]

---

[62] *Williams v. International Brotherhood of Electrical Workers Local 520 (In re Williams)*, 337 F.3d 504, 510 (5th Cir. 2003).

[63] *See Walker v. M&M Dodge, Inc. (In re Walker),* 180 B.R. 834, 840 (Bankr. W.D. La. 1995) ("Discharge is the legal embodiment of the "fresh start"); *Benchmark Bank v. Crumley (In re Crumley),* 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010) (citing *Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009) ("The denial of a discharge is one of the harshest and most punitive sanctions in bankruptcy, and must not be undertaken lightly.")) Denial of discharge may not redound to an individual creditor's benefit because it leaves the complaining creditor on the same footing as all other creditors, for no comparative advantage. *First United Bank & Trust Co. (In re Buescher)*, 491 B.R. 419, 439 (Bankr. E.D. Tex. 2013) (citing *Tuloil, Inc. v. Shahid (In re Shahid),* 254 B.R. 40, 44 (10th Cir. B.A.P. 2000) ("The creditor that seeks such relief under § 727, relief that ultimately inures to all creditors, does not gain any special or particularized benefit…")); 64 Am. Jur. 3d *Proof of Facts* § 113 (2001) ("[I]f the entire discharge is denied, the creditor will incur all of the expense of obtaining denial of the discharge, but will share any resulting benefit with all creditors in what will amount to a race to the courthouse to execute against whatever assets the debtor may have or acquire subsequent to the bankruptcy case which are not exempt.")

[64] Judgment Factors, L.L.C. v. Packer (In re Packer), 816 F.3d 87 (5th Cir. 2016).

[a] basic principle of bankruptcy [is] that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.[65]

The plaintiffs contend that Badeaux should be denied a chapter 7 discharge because within one year before filing bankruptcy, he twice concealed his interest in the Abita Place Property by misrepresenting that it was his wife's separate property.  They allege that he did so first in the cash deed when his wife bought the property, and for a second time in his sworn testimony at a judgment debtor examination before he filed chapter 7.  The plaintiffs point to the debtor's schedules declaring his ownership interest in the Abita Place Property as an admission that he previously misrepresented the property as his wife's separate property to conceal it to hinder or delay creditors.

Bankruptcy Code section 727(a)(2) provides:

(a) The court shall grant the debtor a discharge, unless—…

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>
>> (B) property of the estate, after the date of the filing of the petition; …

A plaintiff must prove four elements to support denying a debtor's discharge under section 727(a)(2)(A):

> '(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.' Constructive intent is inadequate; proof of actual

---

[65] *Id*. at 91 (quoting *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355, 356 (5th Cir.1997)).

intent is necessary, which can be inferred from the debtor's actions and circumstantial evidence.[66]

### 1. The Cash Deed

After the plaintiffs' initial judgment was rendered, Badeaux's wife bought the Abita Place Property for $510,000.[67]  The cash deed includes both the defendant's and his wife's declarations that the property was to be her separate property.[68]

The plaintiffs' motion for summary judgment argues that Badeaux's claim in the cash deed that the Abita Place Property was his wife's separate property was an attempt to hinder or delay creditors by concealing his community ownership interest.[69]  To support this, both Shirley's and Pearson's declarations in support of the motion recite:

> I understand from counsel that Debtor misrepresented his ownership interest in property that he purchased with his wife in January 2021.  Debtor has done everything in his power to delay and hinder our ability to collect on the … judgments.[70]

The issue is whether the declarations are sufficient proof to deny the debtor's discharge. Fed. R. Civ. P. 56(c)(4), made applicable by Fed. R. Bankr. P. 7056, provides

> An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

---

[66] *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 698 (5th Cir. 2009) (quoting *Pavy v. Chastant (In re Chastant),* 873 F.2d 89, 90 (5th Cir. 1989), and citing *Hibernia National Bank v. Perez (Matter of Perez)*, 954 F.2d 1026, 1029 (5th Cir. 1992)).

[67] January 22, 2021 302 Abita Place Cash Deed, P-15, Exhibit 17.

[68] *Id*.

[69] Motion for Summary Judgment, P-15, ¶ 75.

[70] Declaration of Clint Shirley, P-15, Exhibit 1, ¶ 23; Declaration of John Pearson, P-15, Exhibit 2, ¶ 22.

Mr. Shirley's and Mr. Pearson's declarations that the debtor misrepresented his ownership interest to hinder or delay their ability to collect on the judgments were not made on their personal knowledge but instead parroted their lawyer's thoughts.  Those declarations are inadequate to support summary judgment under Rule 56 and Fed. R. Bankr. P. 7056.[71]  Plaintiffs are not entitled to summary judgment unless other evidence supports their position.

### 2.  The Judgment Debtor Examination

The plaintiffs also sought to carry their burden of proof with the declaration of Arthur Kraatz, the plaintiffs' counsel.  Kraatz's declaration recites in relevant part that:

> On March 11, 2021, Debtor appeared for a judgment debtor examination and testified under oath that certain property at 302 Abita Place that was acquired in January 2020 was his spouse's separate property.  A court reporter did not transcribe the examination.[72]

Mr. Kraatz, who was acting as plaintiffs' counsel at the judgment debtor examination, did not obtain a transcript of the debtor's testimony and instead is summarizing his recollection of that testimony.  The choice was ill advised.

In *Inglett & Co. v. Everglades Fertilizer Co.*,[73] the Fifth Circuit reasoned that it was "an inherently unsound practice" to rely on the affidavit of counsel for facts supporting summary judgment:[74]

> We consider it a tribute to the high calling of advocacy to say that we think it an unnatural, if not virtually impossible, task for counsel, in his own case, to drop his garments of advocacy and take on the somber garb of an objective fact-stater. …

---

[71]  *See U.S. v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) (affidavit based on hearsay, rather than personal knowledge, was inadmissible); *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003) (affidavit based on "information and belief," rather than personal knowledge, was inadmissible).

[72]  Declaration of Arthur Kraatz, P-15, Exhibit 3, ¶ 7.

[73]  *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349–50 (5th Cir. 1958).

[74]  *Id.* at 340.

> [I]f it takes an oath to establish or affirm that which is a fact so that it can be further established as an 'uncontradicted' fact, we doubt that it is conducive to the orderly administration of justice for counsel to become the voice on summary judgment.  The reason behind the accepted canon on counsel testifying is or may be present, at least tentatively since the Court is put in the position of passing upon the credibility of the contending votaries.  Experience proves that the adversary system functions best when the role of Judge, of counsel, of witness is sharply separated.[75]

Hence the plaintiffs are not entitled to summary judgment based on their counsel's declaration absent other evidence supporting their position.

### 3.  The Debtor's Schedules

Contrary to the January 2021 cash deed's recital that his wife acquired the Abita Place Property as her separate property, the debtor declared under penalty of perjury on Schedule A/B in his bankruptcy case that on filing bankruptcy he owned an interest in the Abita Place Property, claiming that it was community property.[76]  He also claimed a $35,000 Louisiana homestead exemption on it.[77]  His schedule D identified the mortgage holder for the property, PNC Mortgage, though Badeaux did not list the debt as a community obligation.[78]

The plaintiffs contend that the debtor's scheduling of the Abita Place Property is an admission that he previously misrepresented the property as his wife's separate property.  They urge this to support their claim that Badeaux concealed his interest for the purpose of hindering or delaying creditors.

---

[75]  *Id*. at 349-50.

[76]  Schedule A/B, Case no. 21-11077, P-15, p. 1.

[77]  Schedule C, Case no. 21-11077, P-16, p. 1.

[78]  Case no. 21-11077, P-17, p. 3.

Although the debtor's schedules are a subsequent representation that the Abita Place Property is community property, determining the debtor's intent from scheduling alone is more difficult.

In *Pavy v. Chastant (In re Chastant),*[79] the Fifth Circuit discussed proof of intent to defraud under section 727(a)(2)(A), concluding:

> 'evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge.' Constructive intent is insufficient. Actual intent, however, may be inferred from the actions of the debtor and may be proven by circumstantial evidence.[80]

The Fifth Circuit has identified several factors, also known as "badges of fraud," that tend to prove actual intent to defraud. Those are:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.[81]

The plaintiffs point to evidence that in their opinion establishes the following "badges of fraud":

> (1) the friendship and relationship of trust between the parties; (2) Debtor's benefit from misappropriation of Plaintiffs' investments; (3) the pattern and cumulative effect of Debtor's fraudulent scheme; (4) the threat and filing of lawsuits by creditors; (5) the criminal prosecution of Debtor for contractor fraud and bad checks; and (6) the chronology of events leading to the injury suffered by Plaintiffs.[82]

---

[79] *Pavy v. Chastant (In re Chastant),* 873 F.2d 89 (5th Cir. 1989).

[80] *Id.* at 91 (citations omitted).

[81] *Id. See also Soza v. Hill (In re Soza*), 542 F.3d 1060, 1067 (5th Cir. 2008).

[82] Motion for Summary Judgment, P-15, ¶ 70.

Though the debtor did not file an objection to summary judgment, his answer to the complaint states:

41.

Debtor admits the allegations contained in paragraph "41" of the Complaint[83] and specifically avers that, at the time of the Judgment Debtor Examination, he mistakenly believed the property located at 302 Abita Place was the separate property of his wife. Subsequently, Debtor learned that the Abita Place property could still be deemed to be community property and, accordingly, disclosed Abita Place as community property on his bankruptcy schedules out of an abundance of caution. …

43.

Debtor admits the allegations contained in paragraph "43" of the Complaint[84] but clarifies that debtor and his spouse mistakenly believed that the language contained in the purchase agreement for Abita Place established it as her separate property. Subsequently, they learned that Abita Place could still be deemed as their community property even though the purchase agreement said otherwise.

The debtor's answer to the complaint and disclosure of his interest in the Abita Place Property in his schedules cast doubt on debtor's intent. Had the debtor simply filed a timely opposition and opposing affidavit disputing the material fact of his intent, he might have thwarted the granting of summary judgment. Too, he did schedule his interest in the Abita Place Property, which is consistent with his belated answer to the complaint asserting he "mistakenly believed the [Abita Place Property] was the separate property of his wife." A debtor lacks intent

---

[83] Paragraph 41 of the complaint provides:

On March 11, 2021, Debtor appeared for a judgment debtor examination in connection with efforts to collect on the Judgment. At the judgment debtor examination, Debtor testified under oath that the property at 302 Abita Place was Mrs. Badeaux's separate property.

[84] Paragraph 43 of the complaint provides:

Mrs. Badeaux testified that she and Debtor never opted out of the community property regime and have had a community property regime since they were married in 2002.

to hinder, delay or defraud when he is acting under an honest belief, even if that belief is later found to be mistaken.[85]

Bankruptcy courts are bound to grant properly supported requests for relief.[86] But the courts' paramount obligation always is to do justice.[87] This obligation is even more compelling when the remedy sought is denial of discharge.[88] Badeaux's testimony at trial may shed light on his intent.

Based on the magnitude of denying the debtor a discharge of all debts, not only the debts to these creditors but to any creditor, in conjunction with the Fifth's Circuit's admonition to construe discharge objections against a creditor strictly and construe them liberally in debtors' favor, the debtor's intent regarding his statements concerning the Abita Place Property presents a genuine issue of material fact. The plaintiffs' motion for summary judgment denying the debtor's discharge under section 727(a)(2) therefore is denied.

## V. CONCLUSION

The plaintiff's motion for summary judgment is granted in part and denied in part. The damages awarded plaintiffs Playa Shirley, LLC, and John Pearson against Brandon Badeaux in the Louisiana state court judgments of October 21, 2020 and February 9, 2021 are nondischargeable under Bankruptcy Code section 523(a)(2)(A) and (a)(6). The plaintiffs' motion

---

[85] *Schwyhart v. Schwyhart (In re Schwyhart)*, 618 B.R.793, 809 (Bankr. N.D. Tex. 2020) (debtors lacked intent under section 727(a)(2) when they had "an honest but erroneous belief that they lacked an equitable interest" in an account).

[86] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505 (1986) (opposing party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment").

[87] "[T]he purpose of the Bankruptcy Rules is to secure the speedy and efficient administration of justice." *Chicago Title Ins. Co. v. Baggett (In re Baggett)*, 223 B.R. 100, 101 (Bankr. N.D. Tex. 1997).

[88] "The discharge provisions require the court to grant the debtor a discharge of all his debts except for very specific and serious infractions on his part." *Matter of Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991) (quoting S. Rep. No. 989, 95th Cong., 2d. Sess. 7 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5793).

for summary judgment declaring those debts nondischargeable under sections 523(a)(2)(B) and

(a)(4) is denied.

The plaintiffs' motion for summary judgment denying the debtor's discharge under

section 727(a)(2) is denied.

Counsel for plaintiffs shall submit a proposed judgment.

Baton Rouge, Louisiana, April 12, 2022.

<u>**s/ Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE